1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  SOHAILA AZIZI,                          No.  2:14-cv-1693-CKD

12              Plaintiff,

13      v.                                  ORDER

14  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
15
                Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19  ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability

20  Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons

21  discussed below, the court will recommend that plaintiff's motion for summary judgment be

22  denied and that the Commissioner's cross-motion for summary judgment be granted.

23  I.      BACKGROUND

24          Plaintiff, born June 15, 1973, applied on February 2, 2011 for DIB, alleging disability

25  beginning October 1, 2009.  Administrative Transcript ("AT") 172-78.  Plaintiff alleged she was

26  unable to work due to severe back pain, arm and leg pain, and headaches, among other issues.

27  AT 231.  In a decision dated January 29, 2013, the ALJ determined that plaintiff was not

28

                                        1

disabled.[1]  AT 21-32.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: lumbar degenerative disc disease, status post lumbar spine surgery, and depression.
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.  After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: The claimant is capable of standing and/or walking for a total of four hours during an eight-hour workday and sitting for a total of six hours.  The claimant is capable of lifting and/or carrying 10 pounds frequently and 20 pounds occasionally. The claimant is capable of occasionally stooping, crouching, kneeling, squatting, and crawling.  The claimant can occasionally push right leg foot controls.  The claimant can rarely climbing [sic] ladders.  The claimant is capable of performing unskilled work.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on June 15, 1973 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2009, through the date of this decision.

AT 23-31.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) failed to find that plaintiff meets Listing 1.04A, Disorders of the Spine; (2) failed to call a medical expert at the hearing; (3) improperly assessed the medical opinion evidence in the record when determining plaintiff's residual functional capacity ("RFC"); (4) improperly found plaintiff's testimony to be not credible; (5) posed a hypothetical  to the vocational expert ("VE") at step five of the analysis that failed to take into consideration all of plaintiff's impairments.

/////

3

1    III.    LEGAL STANDARDS

2            When previously granted benefits are terminated by the Commissioner, the burden of

3    proof ordinarily shifts.  Rather than resting on a current recipient of disability benefits to prove

4    that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no

5    longer disabled.  "Once a claimant has been found to be disabled, . . .a presumption of continuing

6    disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence

7    sufficient to rebut this presumption of continuing disability."  Bellamy v. Secretary of Health &

8    Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d

9    1014 (C.D. Cal. 2000) (same).  This evidence then is reviewed under the substantial evidence

10   standard.  Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th

11   Cir. 1983)).

12           Substantial evidence means more than a mere scintilla of evidence, but less than a

13   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

14   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

15   mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

16   402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59

17   S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d

18   1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts

19   from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

20   The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting

21   evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial

22   evidence supports the administrative findings, or if there is conflicting evidence supporting a

23   finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v.

24   Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal

25   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

26   Cir. 1988).

27   /////

28   /////

4

1  IV.  ANALYSIS

2       A.    The ALJ did Not Err in Determining that Plaintiff's Impairments did Not Meet the

3             Criteria of Listing 1.04A

4       Plaintiff contends she meets Listing 1.04 (disorders of the spine) because of her

5  degenerative disc disease and spinal stenosis.  Plaintiff asserts that the ALJ erred by finding that

6  plaintiff's impairments did not meet the requirements for this listing.

7       At step three, the ALJ determines whether "a claimant's impairment meets or equals an

8  impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]."  Tackett v. Apfel, 180 F.3d

9  1094, 1099 (9th Cir. 1999).  The Listing of Impairments describes specific impairments of each

10  of the major body systems "which are considered severe enough to prevent a person from doing

11  any gainful activity."  Id. (citing 20 C.F.R. § 404.1525).  If a claimant meets or equals a listed

12  impairment he or she will be found disabled at this step without further inquiry.  Tackett, 180

13  F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)).

14      A claimant bears the burden of proving that his or her impairments satisfy all the criteria

15  of a particular listing.  Tackett, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met

16  or equaled each of the following characteristics of a listing.").  "For a claimant to show that his

17  [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An

18  impairment that manifests only some of those criteria, no matter how severely, does not qualify."

19  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).  If a claimant's impairment

20  or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to

21  the claimant's ability to perform his or her past relevant work or any other jobs.  20 C.F.R. §

22  404.1520(d).

23      Listing 1.04A requires:

24      Evidence of nerve root compression characterized by neuro-anatomic distribution
        of pain, limitation of motion of the spine, motor loss (atrophy with associated
25      muscles weakness or muscle weakness) accompanied by sensory or reflex loss
        and, if there is involvement of the lower back, positive straight-leg raising test
26      (sitting and supine).

27

28  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.  In other words, evidence of both motor loss (i.e.,

1  muscle weakness or atrophy associated therewith) and sensory or reflex loss, in addition to

2  limitation of motion of the spine, is required.  Furthermore, "a report of atrophy should be

3  accompanied by measurement of the strength of the muscle(s) in question generally based on a

4  grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength."

5  Id. § 1.00E(1).

6      The ALJ adequately and accurately summarized the medical records and noted that

7  "the medical evidence of record does not support a finding that the claimant's impairments result

8  in compromise of a nerve root or the spinal cord, as required under Listing 1.04.  Additionally, no

9  treating or examining physician has recorded findings equivalent in severity to the criteria of any

10  listed impairment, nor does the evidence show medical findings that are the same or equivalent to

11  those of any listed impairment."  AT 24.  The ALJ was not required to address in more detail why

12  plaintiff did not meet or equal a Listing.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.

13  1990).

14      More importantly, the ALJ's determination that plaintiff did not meet all of the

15  requirements of Listing 1.04A was supported by substantial evidence in the record.  While there

16  is evidence in the record of moderate nerve root compression, see, e.g., AT 465-66, 552, 554, and

17  that plaintiff had spinal range of motion limitations, see, e.g., AT 325, 341, 452, there was

18  substantial medical evidence suggesting that plaintiff did not have muscle weakness and sensory

19  or reflex loss as required by Listing 1.04A.  In particular, while there is some evidence that

20  plaintiff suffered minor motor loss on her right side, AT 338, 343, 346-47, the bulk of the medical

21  findings in the record note that plaintiff suffered no muscle weakness, e.g., AT 400 ("Motor

22  strength 5/5 in all extremities."), 451-52 (finding "no evidence of muscle atrophy or spasm" with

23  regard to any portion of plaintiff's body, including lower back and extremities), 453 (finding

24  motor strength limitations, but determining that the limitations were "secondary to effort and pain

25  and do[ ] not represent a true neurologic insult"), 464 ("Tone, bulk, and strength are normal in all

26  muscle groups.").  Similarly, the medical evidence generally demonstrates that plaintiff had intact

27  sensation, with normal reflexes.  E.g., AT 330, 345 ("Sensory exam is intact."), 346 ("Sensation

28  is intact."), 453 (noting normal sensation and reflexes in all extremities).

1      While plaintiff asserts that some of the medical findings in the record support a

2  determination that she meets the Listing 1.04A muscle weakness and sensory or reflex loss

3  requirements, it was the ALJ's prerogative to resolve the conflict between this evidence and the

4  above evidence that indicated that plaintiff did not meet these requirements.   Molina v. Astrue,

5  674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one

6  rational interpretation, we must uphold the ALJ's findings if they are supported by inferences

7  reasonably drawn from the record.").  The ALJ addressed and weighed the above medical

8  findings from the record and came to the reasonable conclusion that plaintiff's impairments did

9  not meet or equal the requirements of Listing 1.04A.  Indeed, as noted above, there was

10  substantial evidence to support the ALJ's conclusion that plaintiff's spinal impairment was not

11  limiting in a way that satisfied all of the requirements of Listing 1.04A.  Even if there may have

12  some been evidence in the record indicating to the contrary, the court is required to adopt the

13  ALJ's rational interpretation of the evidence, which demonstrates that plaintiff's impairments did

14  not meet all of the requirements of Listing 1.04.  See Molina, 674 F.3d at 1111.

15      Given the above medical findings in the record, there was substantial evidence upon

16  which the ALJ could draw her conclusion that plaintiff's impairments did not meet or equal the

17  requirements of Listing 1.04A.  Accordingly, the ALJ did not err in finding that plaintiff did not

18  meet a listing at step three.

19      B.    The ALJ's Decision to Not Call a Medical Expert to Testify at the Hearing

20              was Not Erroneous

21      Plaintiff next contends that the ALJ erred by not obtaining the testimony of a medical

22  expert regarding whether plaintiff's impairments met or equaled the criteria of Listing 1.04A.

23  Plaintiff claims that an unspecified "longstanding policy" required the ALJ to obtain "expert

24  opinion evidence from a physician . . . designated by the Commissioner on the issue of

25  equivalence."  ECF No. 21 at 14.

26      20 C.F.R. § 404.1527(e)(2)(3) provides that the ALJ "may also ask for and consider

27  opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on

28  whether [the claimant's] impairment(s) equals the requirements of any impairment listed in

1  appendix 1 to [subpart P]." "When [the ALJ] consider[s] these opinions, [the ALJ] will evaluate

2  them using the rules [that are used to weigh other medical opinions]." 20 C.F.R. §

3  404.1527(e)(2)(3). As stated in this regulation, and contrary to plaintiff's assertion, the ALJ in

4  this case was permitted to obtain and consider the opinion of a medical expert on the subject of

5  whether plaintiff's impairments met or equaled a listing, but was not mandated to do so. As noted

6  above, there was sufficient medical opinion evidence in the record, which included the opinions

7  of plaintiff's treating physicians, consultative examining physicians, and non-examining

8  physicians who reviewed plaintiff's medical records, on which the ALJ could and did draw her

9  step three conclusion. Accordingly, plaintiff's contention lacks merit.

10       C.       The ALJ Properly Assessed the Medical Opinion Evidence

11       Third, plaintiff asserts that the ALJ erred by giving "little weight" to the medical opinion

12  of Dr. Bahandari, one of plaintiff's treating physicians, and "great weight" to the opinion of Dr.

13  Pon, an examining physician.

14       The weight given to medical opinions depends in part on whether they are proffered by

15  treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

16  1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a

17  greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80

18  F.3d 1273, 1285 (9th Cir. 1996).

19       To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20  considering its source, the court considers whether (1) contradictory opinions are in the record,

21  and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

22  treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

23  F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be

24  rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at

25  830. While a treating professional's opinion generally is accorded superior weight, if it is

26  contradicted by a supported examining professional's opinion (e.g., supported by different

27  independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

28  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In

8

1   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

2   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

3   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

4   non-examining professional, without other evidence, is insufficient to reject the opinion of a

5   treating or examining professional.  Lester, 81 F.3d at 831.

6          Here, Dr. Bhandari issued a medical source statement regarding the impact plaintiff's

7   physical impairments had on her ability to perform work-related activities on November 29, 2011.

8   AT 558-61.  In this report, Dr. Bhandari noted that he had been plaintiff's treating physician since

9   April of 2005.  AT 558.  He diagnosed plaintiff with degenerative disc disease of the lumbar

10  region of the cervical spine, depression, osteoarthritis of the hands and right knee, and a disc

11  bulge at L3-4.  Id.  Dr. Bhandari further noted that these impairments caused plaintiff to suffer

12  from lower back pain that radiates into her right leg and that increases in intensity when she

13  stands, walks, or bends down.  Id.  He also noted that plaintiff suffered knee pain and mental

14  stress and depression and would become easily fatigued.  Id.  Furthermore, he noted that plaintiff

15  had a reduced range of motion in her lumbar area and had a positive straight leg raise test at 30

16  degrees for her right leg.  Id. at 559.  He also stated that an MRI of plaintiff's back taken on April

17  22, 2010 "showed disc bulge at L3-4" and "spinal stenosis at L1-L2."  Id. at 558.

18         With regard to the impact plaintiff's impairments had on her ability to perform work-

19  related functions, Dr. Bhandari opined that plaintiff could walk no more than 3 blocks without

20  needing rest or suffering severe pain.  Id. at 559.  He further opined that plaintiff could sit for no

21  more than 20 minutes and stand for no more than 10 minutes at a time.  Id.  He also opined that

22  plaintiff could sit, stand, and walk for less than 2 hours total in an 8-hour workday.  Id.  However,

23  he found that plaintiff's impairments not require a job that permits shifting from sitting, standing,

24  and walking positions at will.  Id.  Furthermore, he determined that plaintiff needed to walk every

25  20 minutes for 5 minutes at a time.  Id. at 560.  He also found that plaintiff would need to take

26  unscheduled work breaks every 20 to 30 minutes for an average of 20 minutes at a time.  Id.  He

27  further opined that while plaintiff did not need to have her legs elevated when sitting for

28  prolonged periods, she would need a cane when engaging in occasional standing and walking.  Id.

1    Dr. Bhandari also determined that plaintiff could rarely lift less than 10 pounds, twist, or climb

2    ladders or stairs, and could never stoop, crouch, or squat.  Id.  He also determined that plaintiff

3    had mild-to-moderate limitations regarding reaching, handling, and fingering activities.  Id. at

4    560-61.  He further opined that plaintiff's symptoms would cause plaintiff to likely be "off task"

5    while at work for up to 10% of the time.  Id. 561.  Finally, Dr. Bhandari opined that plaintiff is

6    "incapable of performing even 'low stress' work" due to her continuous lower back pain and

7    depression.  Id.

8              The ALJ assigned "little weight" to Dr. Bhandari's opinion for the following reasons:

9              Dr. Bhandari's opinion is inconsistent with the medical evidence of record.  He
10             diagnosed the claimant with spinal stenosis at the L1-2 level, and disc bulge at the
             L3-4 level, which was contradicted by the MRIs taken in July 2012.  Additionally,
11             Dr. Bhandari identified limitations secondary to right knee pain that are not
             supported by the record, as the claimant only complained of right knee pain in
12             December 2012, and Dr. Bhandari did not perform regular testing to demonstrate
             these limitations.  Furthermore, while Dr. Bhandari supposedly prescribed a
13             walker in July 2012, there are no treatment notes during the summer of 2012
             mentioning a walker.  Based on the treatment record, it appears the claimant
14             initially requested a walker in December 2012.

15

16   AT 28 (citations to the record omitted).  As discussed below, these were proper reasons for

17   discounting Dr. Bhandari's opinion that were based on substantial evidence from the record.

18             First, the ALJ correctly noted that Dr. Bhandari's diagnosis of spinal stenosis at the L1-2

19   level and disc bulge at the L3-4 level is contradicted by the MRI results in the record.  Indeed, on

20   September 24, 2009, an MRI was taken of plaintiff's back, which demonstrated "no evidence of

21   canal stenosis" at the L1-2 level and "normal" findings for a person of plaintiff's age at the L3-4

22   level.  AT 383-84.  On April 22, 2010, a second MRI result showed that there was"[n]o

23   substantial or foraminal stenosis . . . present" at the L1-2 level and a "minimal broad-based

24   posterior disc bulge" at the L3-4 level.  AT 327.  However, a third MRI taken on April 4, 2011

25   indicated that plaintiff did not have a disc bulge at L3-4 and "slight discal narrowing" at L1-2 that

26   did not cause nerve root compression.  AT 466.  A final MRI result taken after Dr. Bhandari

27   issued his opinion indicated that the discal narrowing at L1-2 had become "moderate" and that a

28   "mild posterior disc bulge" was present at the L3-4 level.  AT 552.

While there is evidence of a disc bulge at the L3-4 level in the MRI dated April 22, 2010, neither of the other two MRIs that had been taken prior to Dr. Bhandari's opinion provided such a finding. Moreover, none of the MRIs in the record showed that plaintiff suffered from spinal stenosis at the L1-2 level. While there was some narrowing indicated at this level, the MRI results specifically noted that there was no nerve root compression, which is necessary for a diagnosis of spinal stenosis. Dr. Bhandari specifically stated in his opinion that the April 22, 2010 MRI showed that plaintiff had spinal stenosis at the L1-2 level despite the MRI report stating that there was "[n]o substantial or foraminal stenosis . . . present" at this level. AT 327, 558. The ALJ properly resolved the conflict between Dr. Bhandari's opinion and the MRI results in the record by reasonably determining that Dr. Bhandari's opinion was entitled to only reduced weight. See Andrews, 53 F.3d at 1039 (9th Cir.1995) (noting that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

Plaintiff asserts that this contradiction should not be sufficient to discount Dr. Bhandari's opinion because it is possible that Dr. Bhandari merely mislabeled the location of the disc bulge and stenosis on plaintiff's spine, which does not diminish the limitations he opined. This argument is without merit, however, because plaintiff provides no evidence demonstrating that this was the case. The ALJ reasonably interpreted the evidence that was before her to determine that Dr. Bhandari's opinion conflicted with the objective medical findings contained in plaintiff's MRI reports, thus entitling it to diminished weight.

Second, the ALJ's determination that the limitations secondary to knee pain opined by Dr. Bhandari were not supported by the medical record established prior to the time he issued his opinion was proper and well supported by the record. Plaintiff argues that this determination is incorrect because the record supports Dr. Bhandari's opinion regarding the existence of plaintiff's knee pain at the time of Dr. Bhandari's opinion. However, the portions of the record plaintiff refers to in support of her argument do not actually indicate that plaintiff specifically suffered from the knee pain opined by Dr. Bhandari. For instance, plaintiff references medical records that were issued prior to Dr. Bhandari's opinion that indicate that plaintiff had difficulties walking

1    on her heels and toes and had positive straight leg raise tests.  E.g., AT 363.  However, there is no

2    indication from these records that any of these complications caused plaintiff to experience knee

3    pain or resulted from the knee pain Dr. Bhandari opined.  Furthermore, a review of the medical

4    record, including Dr. Bhandari's own treating notes, from the period prior to Dr. Bhandari's

5    opinion does not generally reveal findings that would support Dr. Bhandari's opinion that

6    plaintiff suffered limitations secondary to knee pain.  See, e.g., AT 484 (noting only complaints

7    of "back pain from shoulder to hip"), 486-87 (lower back pain), 489-90 (pain in back, left foot,

8    and right heel).  But see AT 485 (noting plaintiff's complaint of right knee pain).  Indeed, as the

9    ALJ noted in her decision, the record indicates that plaintiff herself did not complain specifically

10   to Dr. Bhandari about her knee pain until December of 2012, AT 545, well after Dr. Bhandari

11   issued his opinion.  Accordingly, the ALJ properly relied on the specific finding that Dr.

12   Bhandari's opinion that plaintiff suffered limitations secondary to knee pain was not sufficiently

13   supported by the medical findings in the record as an additional reason for assigning diminished

14   weight to Dr. Bhandari's opinion.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190,

15   1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory,

16   brief, and unsupported by the record as a whole . . . or by objective medical findings.") (citations

17   omitted).

18         Finally, the ALJ highlighted that while Dr. Bhandari's treatment notes state that he

19   prescribed plaintiff a walker in July of 2012, those same notes indicate that plaintiff first

20   requested a walker in December of 2012.  Plaintiff argues that this apparent inconsistency does

21   not support the ALJ's conclusion to give Dr. Bhandari's opinion reduced weight because there is

22   no indication in the record as to why plaintiff waited until December of 2012 to fill the

23   prescription for a walker Dr. Bhandari issued in July of 2012.  Regardless, it was within the

24   ALJ's power to resolve this apparent conflict in Dr. Bhandari's treatment notes.  See Meanel v.

25   Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing Andrews, 53 F.3d at 1039) ("The ALJ is

26   responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

27   ambiguities.").  She did so by reasonably determining that this discrepancy in Dr. Bhandari's

28   treatment notes undermined the credibility of his opinion.  Therefore, the ALJ did not err in citing

1    this discrepancy in support of her determination that Dr. Bhandari's opinion was entitled to

2    reduced weight.

3        In sum, the inconsistencies the ALJ noted between Dr. Bhandari's opinion and the rest of

4    the medical record were supported by substantial evidence and properly supported the ALJ's

5    determination that Dr. Bhandari's opinion was entitled to only "little weight" in the ALJ's

6    consideration of plaintiff's RFC.  Accordingly, the ALJ did not err in addressing Dr. Bhandari's

7    opinion in the manner that she did.

8        Similarly, the ALJ did not err in assigning "great weight" to the medical opinion of Dr.

9    Pon.  The ALJ's RFC determination largely paralleled Dr. Pon's opinion regarding the extent of

10   plaintiff's functional limitations.  See AT 25, 507.  The ALJ reasoned that Dr. Pon's opinion was

11   entitled to great weight because it was largely consistent with the record as a whole and, in

12   particular, with the evidence showing that plaintiff had only "mild" disc narrowing in the lumbar

13   spine and could ambulate effectively without the use of an assistive device.  AT 28.  The ALJ

14   also highlighted the fact that Dr. Pon based his opinion on his own medical examination of

15   plaintiff.  Id.  Plaintiff argues, however, that Dr. Pon's medical findings actually support Dr.

16   Bhandari's opinion regarding the extent of plaintiff's limitations because Dr. Pon's clinical

17   findings showed that plaintiff exhibited pain inhibition weakness in her lower right extremity, a

18   sensory impairment in her right foot, and had positive straight leg raising tests in both the supine

19   and sitting positions.  However, the ALJ properly assigned diminished weight to Dr. Bhandari's

20   opinion for the reasons stated above and a review of the record shows that the ALJ reasonably

21   determined that Dr. Pon's opinion is generally consistent with the overall medical evidence in the

22   record, including Dr. Pon's own examination findings.  Accordingly, plaintiff fails to show that

23   the ALJ erred in considering Dr. Pon's opinion when determining plaintiff's RFC.

24       D.    The ALJ Properly Assessed Plaintiff's Credibility

25       Fourth, plaintiff argues that the ALJ erred by finding plaintiff's testimony to lack

26   credibility with regard to the intensity, persistence, and limiting effects of her impairments.

27   /////

28   /////

1        The ALJ determines whether a disability applicant is credible, and the court defers to the

2   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

3   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

4   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

5   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

6   supported by "a specific, cogent reason for the disbelief").

7        In evaluating whether subjective complaints are credible, the ALJ should first consider

8   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

9   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

10   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

11   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

12   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

13   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

14   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

15   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

16   01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

17   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

18   Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

19   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

20   in determining whether the alleged associated pain is not a significant nonexertional impairment.

21   See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

22   on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

23   1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

24   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

25   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

26   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

27   /////

28   /////

Here, the ALJ gave the following reasons for finding plaintiff's testimony less than

credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms; however the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely credible for the
> reasons explained in this decision.  The claimant's reports regarding the frequency
> of her medical treatment is not supported by the record.  The claimant's account of
> the frequency of assistance received from her sister is also inconsistent with her
> sister's reports.  The claimant alleges side effects from medication, but the medical
> evidence does not support this allegation.  In addition, during the claimant's
> consultative psychological examination, she engaged in "behaviors suggestive [of]
> decreased motivation and effort."

AT 30 (citations the record omitted).

First, the ALJ reasoned that plaintiff's statements regarding the frequency she received

medical treatment from certain physicians and family members were inconsistent with the other

evidence in the record regarding these visits.  The ALJ determined that these inconsistencies

demonstrated that plaintiff's statements were less than credible.  This determination was proper

and was supported by substantial evidence.  Indeed, while plaintiff testified that she was treated

by Dr. Bhandari at least once a month, and sometimes twice a month, AT 47, and by Dr. David

once per month, AT 49, plaintiff's treatment records demonstrate that plaintiff was treated by

these physicians on a far more sporadic basis, see, e.g., AT 534-38.  Similarly, plaintiff testified

that her sister came to assist her 2-to-4 times per week, AT 50, but her sister's report states that

she came to assist plaintiff "almost every day," AT 248.  These inconsistencies substantially

supported the ALJ's adverse credibility determination.  See Thomas v. Barnhart, 278 F.3d 947,

959 (9th Cir. 2002) (holding that the ALJ could rely on the inconsistencies between plaintiff's

testimony and the record as substantial evidence in support of the ALJ's adverse credibility

determination).

Furthermore, the ALJ's determination that plaintiff was less than credible based on

evidence in the record that plaintiff exhibited behaviors suggestive of decreased motivation and

effort was also a proper reason for discounting plaintiff's testimony.  See Mohammad v. Colvin,

595 F. App'x 696, 697 (9th Cir. 2014) ("Evidence of malingering is also sufficient to support a

1    negative credibility finding.").  As noted by the ALJ, Dr. Tobias, a consulting psychologist,

2    determined that the psychological testing he administered to plaintiff was invalidated by

3    plaintiff's "behaviors suggestive of decreased motivation and effort."  AT 501.  Indeed, Dr.

4    Tobias noted that plaintiff "stall[ed] on timed tasks, . . . provided approximate responses, and at

5    times . . . failed to correctly complete simple test items."  Id.  The ALJ reasonably drew from this

6    evidence of decreased effort to determine that plaintiff's testimony regarding the extent of her

7    limitations and pain was less than credible.

8          Plaintiff asserts that the ALJ's reliance on Dr. Tobias' opinion is misplaced because the

9    behaviors plaintiff exhibited when taking Dr. Tobias' cognitive tests were attributable to the fact

10   that plaintiff did not obtain her childhood education in the United States and did not speak

11   English as her first language, rather than due to the decreased motivation and effort Dr. Tobias

12   opined.  However, as Dr. Tobias noted in his opinion, plaintiff is bilingual in Farsi and English

13   and spoke English during Dr. Tobias' psychological examination, AT 501, which indicates that

14   plaintiff was not excessively limited in her ability to complete the tests Dr. Tobias administered in

15   English.

16         Plaintiff further asserts that it is possible to interpret Dr. Tobias' statement that plaintiff is

17   "bilingual" to mean only that she is able to speak English fluently; not that she is able to

18   effectively read, write, and comprehend written instructions in English.  However, the mere fact

19   that this is a possible interpretation that could explain why plaintiff engaged with Dr. Tobias'

20   psychological tests in a stalled and incomplete manner does not invalidate the ALJ's

21   determination.  The ALJ's interpretation of the evidence, that plaintiff's behavior indicated

22   malingering, was in the very least equally justified by the record.  Accordingly, the court is

23   required to uphold the ALJ's rational interpretation of this evidence. Tommasetti v. Astrue, 533

24   F.3d 1035, 1038 (9th Cir. 2008); Molina, 674 F.3d at 1111.  In sum, ALJ's reliance on Dr.

25   Tobias' notes regarding plaintiff's behavior during examination to determine that plaintiff was

26   less than credible was proper and well supported by the record.

27   /////

28   /////

16

1

    E.      The Hypothetical the ALJ Posed to the Vocational Expert Properly Accounted for

2

                Plaintiff's Impairments

3

       Finally, plaintiff contends the ALJ failed to include all of plaintiff's limitations in the

4

hypotheticals posed to the VE when determining that there were a significant number of jobs that

5

plaintiff can perform.  In particular, plaintiff argues that the ALJ failed to account for plaintiff's

6

limitations resulting from her overactive bladder and the impact of her pain.

7

       Hypothetical questions posed to a vocational expert must set out all the substantial,

8

supported limitations and restrictions of the particular claimant.  Magallanes, 881 F.2d at 756.  If

9

a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in

10

the national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan,

11

924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical

12

questions, based on alternate interpretations of the evidence, the hypothetical that ultimately

13

serves as the basis for the ALJ's determination must be supported by substantial evidence in the

14

record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

15

       Here, the ALJ posed hypotheticals to the VE that included the limitations expressed in the

16

ALJ's RFC determination.  As the ALJ noted in her decision, the RFC determination was based

17

on a consideration of "all symptoms and the extent to which th[ose] symptoms can reasonably be

18

accepted as consistent with the objective medical evidence and other evidence."  AT 26.  While

19

plaintiff contends that the ALJ failed to include any limitations caused by overactive bladder, the

20

only evidence in the record of the existence of such a condition came from Dr. Bhandari and

21

plaintiff, both of whom the ALJ properly discounted for the reasons stated above.  Furthermore,

22

as the ALJ noted in her discussion at step two, plaintiff's overactive bladder condition was non-

23

severe, meaning that it had less than a minimal impact on plaintiff's ability to perform work

24

related activities.  Indeed, nothing in the record suggests that this condition caused any limitations

25

beyond those the ALJ described in her hypotheticals posed to the VE.  See AT 24.  With respect

26

to plaintiff's argument regarding the impact her pain has on her ability to do work, the ALJ

27

addressed plaintiff's subjective statements and properly determined that they were not credible to

28

the extent they did not comport with the ALJ's RFC determination for the reasons discussed

above.  Accordingly, plaintiff's contention that the ALJ posed improper hypotheticals to the VE at step five is not well taken.

V.      CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 21) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 24) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  June 22, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 Azizi.ss